[Crim. No. 16485. Second Dist., Div. One. Dec. 8, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND BENEDICT, Defendant and Appellant.

## COUNSEL

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert J. Polis, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—On October 31, 1968, Officer Beach filed Application For Admission Of Alleged Narcotic Drug Addict under section 3100.6, Welfare and Institutions Code, naming appellant; the next day appellant was examined by Dr. Lavelle after which he was ordered detained under section 3102, and Petition for Commitment as Narcotic Drug Addict (§ 3100.6, Welf. & Inst. Code) was filed November 6, 1968. On November 20, 1968, the matter was heard in Department 95-A by Commissioner

Reese as a Judge pro tempore. The court found appellant to be a narcotic drug addict and committed him to the California Rehabilitation Center for placement; immediately thereafter he demanded a jury trial. Execution of the commitment order was stayed pending the outcome of the jury trial. On January 13, 1969, the jury found him to be a narcotic drug addict. Based on the jury's verdict the court found appellant to be a narcotic drug addict and committed him to the California Rehabilitation Center in execution of the order previously made on November 20, 1968. He appeals from the "sentence and disposition;" we construe the appeal to be from the order of commitment.

On the court trial on November 20, 1968, a hearing was first had on the issue of probable cause. Officer Beach testified that on October 31, 1968, he and Officers Diabla and Castaneda, narcotics division, went to the residence of Gloria Williams with a warrant for her arrest for possession of heroin for sale; after effecting the arrest they waited there for her brother, Ernest, who was wanted as a parole violator. In a half hour there was a knock on the door, Officer Beach opened it and appellant walked in; Beach identified himself as a police officer and asked him for identification; appellant reaching for his wallet, asked what was going on. The officer noticed that appellant's speech was slow and "very thick, very slurred" and that he had a hard time getting his wallet out of his pocket, fumbled through the wallet not sure what he was looking for, and "never did pull out any identification." He then directed his flashlight into appellant's eyes and observed that his pupils were constricted and showed no reaction to light in the semi-darkness of the room. Believing appellant might possibly be under the influence of an opiate-type drug Officer Beach asked him to remove his windbreaker, and on his arms observed numberous puncture wounds caused by a hypodermic needle; appellant was placed under arrest and asked to remove all items from his pocket. While Officer Beach was talking to him appellant's head dropped forward and he appeared sleepy—he was "on the nod"; he handcuffed appellant and advised him of his constitutional rights. He had no conversation with appellant at that time. At the police building Officer Beach administered the pupilometer which indicated no reaction; he found eleven puncture marks on one forearm and nine on the other. An hour and forty-five minutes after arrest appellant told the officers he had been using heroin for twenty years and had been treated for it.

At the conclusion of Officer Beach's testimony, the court made the finding that there was "probable cause for taking [appellant] into custody." Then Dr. Patrick Lavelle, an expert to whose qualifications in the field of narcotics were stipulated, testified that when he examined appellant at 10 a.m. on November 1, 1968, he formed the opinion that he was a narcotic addict in the early stages of narcotic withdrawal. Appellant offered no evidence on his own behalf.

Appellant's claim that since he was examined by only one physician (Dr. Lavelle) the court failed to comply with section 3102, Welfare and Institutions Code, requiring examination by two physicians, and sections 3106 and 3103.5, is without merit. Section 3102, Welfare and Institutions Code, provides: "Upon the filing of a proper petition pursuant to Section 3100, the court shall order the person sought to be committed to be examined by two physicians. Upon the filing of a proper petition pursuant to Section 3100.6, accompanied by the affidavit of the examining physician, the court need not order the person sought to be committed to be examined by any other physician or physicians. . . ." ■ The petition here was filed under section 3100.6, Welfare and Institutions Code, and thereunder appellant was admitted to the hospital. "The appointment of a second examiner was therefore unnecessary." (*People* v. *Donel,* 255 Cal.App.2d 394, 401-402 [63 Cal.Rptr. 168].)

Appellant's three remaining contentions are based upon evidence received and proceedings had solely in the court trial on November 20, 1968. After a full hearing on the issue the court found the officers had probable cause to take appellant into custody, and there is sufficient evidence to support this determination. Thus the claim that appellant was subjected to an illegal search and seizure when the officer ordered him to remove his windbreaker to observe his arms is without substance. ■ "Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. (*People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564].)" (*People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]; *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Schader,* 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665].) ■ As pointed out by appellant, the fact that he was on the premises where the officers had just arrested Gloria for possession of heroin for sale will not alone justify either his arrest or a search of his person (*People* v. *Valdez,* 260 Cal.App.2d 895, 900 [67 Cal.Rptr. 583], and cases cited therein), but here there was more than mere presence or association; there were the additional factors of appellant's movements in attempting to get his wallet out of his pocket and fumbling through it in search of identification which "he never did pull out," his speech which was slow and very thick and slurred and the appearance of his pupils which were constricted and gave no reaction to light. ■ The latter phenomenon was in plain sight of the officer and observed by him without any semblance of a search or seizure; his use of a flashlight to observe the pupillary reaction was not improper. The utilization of the light from a

flashlight directed to that which is in plain sight ordinarily does not render observation thereof a search. (*People* v. *Cacioppo,* 264 Cal.App.2d 392, 397 [70 Cal.Rptr. 356].) ▉ The foregoing factors led Officer Beach, who had made numerous narcotic arrests and was familiar with opiate-type drugs, their usage and paraphernalia, to believe that appellant was under the influence of an opiate drug which constituted probable cause to apprehend him even before he asked appellant to take off his windbreaker. Thus inasmuch as probable cause existed prior to the examination of appellant's arms, that "search and seizure" was not unlawful simply because it preceded, rather than followed the arrest. (*People* v. *Cockrell,* 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116].)

Appellant claims that since he was under the influence of drugs there could not have been a voluntary and intelligent waiver of his constitutional rights[1] therefore, his counsel's motion to strike evidence of his incriminating statements[2] should have been granted. The testimony of Officer Beach relative to these statements was received and the motion to strike was made solely in the first trial before the court. On the jury trial of January 20, 1969, which resulted in the judgment herein, no testimony was admitted relating to appellant's incriminating statements for Officer Beach did not testify. The only witness the jury heard was Dr. Patrick Lavelle who testified that he examined appellant on November 1, 1968, and formed the opinion that he was a narcotic addict in the early withdrawal stages based on his long history of narcotic use, use of narcotics within the last 24 hours and evidence of both fresh and old tracks on appellant's arms and the reaction of the pupils of his eyes. Thus, the statements of which appellant complains were never heard by the jury which ultimately found him to be addicted to narcotic drugs; the judgment based upon that jury verdict is the

---

[1]Officer Beach testified that immediately after appellant's arrest, "I informed him that he had the right to remain silent; if he gave up the right to remain silent, anything he said could and would be used against him in a court of law. He had the right to have an attorney present prior to any questioning. If he requested an attorney and could not afford one, one would be provided by the Court, free of charge. That's basically what I said."

Thereafter the officer was asked, "Did he indicate he understood those rights?" and he answered, "Yes, he said he did." Asked, "Did you ask him if he cared to talk to you?" the officer answered, "I asked him, first of all, 'Do you understand what I just read to you?' He said yes, he did. I said, 'Do you want to have an attorney?' He said no, he doesn't need an attorney. And there wasn't any questioning, at that point. There was questioning later, at the Police Building." Appellant was not questioned until he was taken to the police building.

[2]At the police building appellant told Officer Beach that he had been using heroin for twenty years; that he used marijuana first and gradually graduated to opiate-type drugs; that he had been in Rosemead Hospital two weeks prior to the arrest, having voluntarily committed himself and he remained there approximately one week. Asked about recent puncture marks in his arms, he said he didn't want to talk any more about that.

one from which this appeal was taken. Nothing in the record establishes that in rendering his opinion Dr. Lavelle ever had the benefit of Officer Beach's knowledge of the statements appellant made to him. Dr. Lavelle testified that the first thing he did when he examined appellant on November 1, 1968, was to make a complete history in which appellant himself no doubt included his past hospitalization and drug use; and no objection was made to the admission of Dr. Lavelle's testimony that appellant had been treated twice before for narcotic addiction.

Relying upon *People* v. *Tijerina,* 1 Cal.3d 41 [81 Cal.Rptr. 264, 459 P.2d 680], appellant argues that since he did not personally stipulate that Commissioner Reese could hear the matter on November 20, 1968, as a judge pro tempore and there was no commitment order appointing the commissioner a judge pro tempore, the order of commitment was void. It should be noted that in *Tijerina,* there was neither a stipulation nor an order. Nothing therein indicates that counsel for "the parties litigant" (art. VI, § 21, Cal. Const.) cannot enter into the stipulation for them. However, here there is both a stipulation and an order. Before appellant made his first appearance in Department 95-A, his counsel and counsel for the People signed a stipulation that the "Motion/Hearing-Trial" be heard by James B. Reese, a court commissioner, in accordance with article VI, section 22 of the Constitution of California as judge pro tempore. Further, the stipulation recites language which establishes that the commissioner had been appointed by order of the presiding judge.[3]

The order is affirmed.

Wood, P. J., and Thompson, J., concurred.

---

[3] ". . . and further in accordance with an appointment of said Commissioner by the Presiding Judge of the Superior Court as Judge pro tempore heretofore made under the authority of Article Six, Section Fourteen, of said Constitution and Section 259a, Subdivision 4, of the Code of Civil Procedure of the said State.

"It is understood that by order of the Presiding Judge of the Superior Court, said Commissioner has heretofore been appointed to act as Judge pro tempore as to all matters assigned to him by a Judge of this Court for hearing by him as such Judge pro tempore and that he has taken the necessary oath of office as to all matters so assigned."