26 F.3d 130
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
George W. DOWALIBY, an individual, Plaintiff-Appellant,
v.
NAT. RAILROAD PASSENGER, CORPORATION, a corporation; W.
Graham Claytor, an individual, Gary L. Rose, an individual,
John P. Malinowski, an individual, Lynn D. Berberian, an
individual, L.W. Bullock, an individual, and Does 1-50
Defendants-Appellees.
 No. 92-16126.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 15, 1993.*
Decided June 3, 1994.
 
 Before: POOLE, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 George Dowaliby filed a wrongful termination action against defendant National Railroad Passenger Corporation ("Amtrak") after he was dismissed for refusing to submit to a urinalysis drug test. After removal to federal court, the district court dismissed his suit, concluding that it was preempted by the Railway Labor Act (RLA), 45 U.S.C. Sec. 151 et seq. We affirm.
 
 
 3
 * We review de novo the district court's conclusion that plaintiff's claims are preempted. Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir.1993).
 
 
 4
 The Railway Labor Act sets up a comprehensive system of compulsory dispute resolution in order that labor disputes affecting the nation's transportation systems may be resolved expeditiously. Union Pac. R.R. v. Sheehan, 439 U.S. 89, 94 (1978). The Act divides disputes into two kinds, major and minor. "Major" disputes go to the adoption or alteration of a collective bargaining agreement, while "minor" disputes relate to the interpretation or application of an existing agreement. Elgin, J. & E. Ry. v. Burley, 325 U.S. 711, 723 (1945); see also Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 302 (1989) (Conrail ) ("[M]ajor disputes seek to create contractual rights, minor suits to enforce them."). All minor disputes must be addressed internally, and if necessary, then submitted to the National Railroad Adjustment Board. Andrews v. Louisville & N.R.R., 406 U.S. 320 (1972); 45 U.S.C. Sec. 153(i). The Board's jurisdiction over such matters is exclusive, and review of its decisions is limited. Conrail, 491 U.S. at 304.
 
 
 5
 Conrail establishes the test for whether a dispute is minor and thus within the Board's exclusive jurisdiction:
 
 
 6
 Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.
 
 
 7
 Id. at 307 (emphasis added); see also Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1470 (9th Cir.1991).
 
 
 8
 We therefore turn to the governing collective bargaining agreement to determine whether Dowaliby's claims are preempted. The provision of the Amtrak collective-bargaining agreement relevant to the present dispute is Rule 23(a), which provides:
 
 
 9
 Employees, after completing sixty (60) calendar days of service, will not be required to submit to physical examination unless it is apparent their physical condition is such that an examination should be made.
 
 
 10
 This provision arguably authorizes physical examinations of the type Dowaliby was requested to undergo. When an employee misses fifteen days in a 22-day period for a variety of illnesses, Amtrak can at the very least reasonably contend that 23(a) authorizes them to request a fitness-for-duty physical. Whether the provision in fact justifies their action is irrelevant for preemption purposes; the claim need only be colorable, as it clearly is here.
 
 
 11
 Dowaliby contends, however, that while 23(a) authorizes a physical, it does not expressly authorize drug testing. The facts and result in Conrail, supra, refute this argument. Conrail involved a challenge by a union to the employer's unilateral addition of automatic drug-testing to certain types of routine physicals. The employer could point to no express authorization in the contract, but relied solely on implied terms and past practice to assert that the new policy was arguably justified. The Supreme Court noted that "it is well established that the parties' 'practice, usage and custom' is of significance in interpreting the agreement," Conrail, 491 U.S. at 311, and went on to find it more than sufficient for preemption purposes that the employer had in the past included some drug-testing and had had exclusive control over medical standards.
 
 
 12
 During the administrative hearings that followed Dowaliby's discharge, Amtrak introduced testimony that a drug screen was a routine, automatic part of Amtrak physicals. The district court found to the same effect. This policy was not new; other evidence in the record indicates it had been in place for no less than two years. Nothing Dowaliby has put forward contradicts this characterization of past practice. Conrail therefore compels our conclusion that Amtrak's action was arguably justified by past practice. See also Air Line Pilots Ass'n v. Alaska Airlines, Inc., 898 F.2d 1393, 1396-97 (9th Cir.1990) (concluding that unilateral expansion of drug screening was "arguably justified" in light of employer's previous broad discretion in medical matters). We find Dowaliby's claims to be preempted.
 
 II
 
 13
 Dowaliby contends this analysis is flawed because we need not look to his collective bargaining agreement to determine whether his claims are preempted. He argues that, as developed by the California courts, his state privacy right protects against random drug testing and is unwaivable. Because it is unwaivable, the collective-bargaining agreement cannot "arguably justify" drug testing because the union can't bargain away Dowaliby's privacy rights and drug testing ceases to be a proper subject for collective bargaining. See Utility Workers v. Southern Cal. Edison Co., 852 F.2d 1083, 1085-86 (9th Cir.1988) ("Preemption of state-law claims is inappropriate where state causes of action 'confer[ ] nonnegotiable state-law rights on ... employees independent of any right established by contract.' " (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985))), cert. denied, 489 U.S. 1078 (1989).
 
 
 14
 We have already held in the Labor Management Relations Act ("LMRA") context that the California constitutional privacy right is negotiable, and "a drug-testing program is a proper subject for collective bargaining." Utility Workers, 852 F.2d at 1086; accord Stikes v. Chevron U.S.A., Inc., 914 F.2d 1265, 1270 (9th Cir.1990), cert. denied, 111 S.Ct. 2015 (1991); Schlacter-Jones v. General Telephone, 936 F.2d 435, 441-42 (9th Cir.1991). Dowaliby contends that Luck v. Southern Pac. Transp. Co., 218 Cal.App.3d 1, 267 Cal.Rptr. 618 (1990), cert. denied, 498 U.S. 939 (1990) and Semore v. Pool, 217 Cal.App.3d 1087, 266 Cal.Rptr. 280 (1990), not addressed by our LMRA cases, should alter this conclusion. We are not persuaded.
 
 
 15
 Luck and Semore each involved a nonunion employee who was discharged for refusing to take a drug test. Semore asserts in clear language that the privacy right is unwaivable:
 
 
 16
 While plaintiff could contractually agree not to assert his right to privacy, we think it clear that the employer could not use such an agreement to circumvent the public policy favoring privacy, and the employer could not successfully enforce such a contractual agreement if it intruded on plaintiff's right to privacy.
 
 
 17
 Semore, 217 Cal.App.3d at 1097, 266 Cal.Rptr. at 285. However, Semore is a 2-1 decision. On the question of waivability, the dissenting judge reaches precisely the opposite conclusion. Id. at 1108, 266 Cal.Rptr. at 293 (McDaniel, J., concurring in part & dissenting in part).
 
 
 18
 Moreover, a majority of the Luck court concludes the privacy right is waivable. See Luck, 267 Cal.Rptr. at 635 ("The parties could have lawfully agreed that Luck would submit to urinalysis without violating any public interest.") The dissenting judge in Luck does not reach the issue. Thus, of the five state judges to consider the question, only two have concluded that the privacy right is unwaivable. California law does not clearly establish that privacy rights are unwaivable.
 
 
 19
 This state of the law is fatal to Dowaliby's claim. Given that the right involved might be waivable, the collective-bargaining agreement can still arguably justify Amtrak's conduct. The analysis of his claim involves two steps: 1) whether the right can be waived under California law, and 2) whether this agreement in fact did so. For preemption purposes, it is sufficient that each step be arguable. Because California law is unclear, the first step is arguable, and we have already concluded in Part I that the second step is arguable. Dowaliby's unwaivability argument fails.[1]
 
 III
 
 20
 Finally, Dowaliby contends that the district court's decision is anomalous because it leaves him without a remedy once the Board refused to consider his constitutional claims. Even if this is so, the theoretical lack of a remedy is irrelevant to preemption analysis. See Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1179-80 (7th Cir.1993).
 
 
 21
 George Dowaliby's state-law claims are preempted. The district court's grant of summary judgment was proper.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In addition to the above argument, Dowaliby repeatedly attempts to demonstrate that his claims are "independent" of the collective-bargaining agreement. Since "independence" is part of the preemption test for LMRA cases and this is an RLA case, this argument is of little if any use. See Air Line Pilots Ass'n v. Alaska Airlines, Inc., 898 F.2d 1393, 1396 n. 3 (9th Cir.1990) ("Parallels drawn between the Railway Labor Act and the National Labor Relations Act 'should be drawn with the utmost care and with full awareness of the differences between the statutory schemes.' " (quoting Chicago & N.W. Ry. v. United Transp. Union, 402 U.S. 570, 579 n. 11 (1971)))
 In any event, the Ninth Circuit has already made it quite clear that if plaintiff were governed by the LMRA, his claims would not survive. See Schlacter-Jones v. General Telephone, 936 F.2d 435 (9th Cir.1991) (finding LMRA preempts challenge to drug testing based on California's constitutional privacy right); Utility Workers v. Southern Cal. Edison Co., 852 F.2d 1083 (9th Cir.1988) (same); Laws v. Calmat, 852 F.2d 430 (9th Cir.1988) (same).