No. 95-1529

Robert Landon,                          *
                                        *
              Appellant,                *
                                        *  Appeal from the United States
        v.                              *  District Court for the
                                        *  District of Minnesota.
Northwest Airlines, Inc.,   *
                                        *
              Appellee.         *

Submitted:  October 18, 1995

Filed:  December 18, 1995

Before FAGG, HEANEY, and HANSEN, Circuit Judges.

HEANEY, Circuit Judge.

        Robert Landon, a former employee for Northwest Airlines, was drug
tested and subsequently terminated when his specimen tested positive for
marijuana metabolites.  Landon brought suit against his former employer in
federal court under various federal and state causes of action.  The
district court ordered summary judgment for Northwest Airlines on all
claims.

        With respect to Landon's claims that Northwest's actions violated
federal and state prohibitions on racial discrimination and the California
constitutional right of privacy, we find that there is sufficient evidence
to create a genuine issue of material fact:  the motivations for requiring
Robert Landon to take a drug test on the night of March 2, 1992.  Based on
the evidence presented, a reasonable juror could find that Northwest's
proffered

business reason for requiring Landon to take the drug test was pretextual. As a result, a jury must determine whether the proffered reason was a pretext for racial discrimination. Therefore, summary judgment was inappropriate with respect to Landon's claims of racial discrimination and invasion of privacy. We reverse the district court's dismissal of those two claims and remand them for trial.

BACKGROUND

Appellant, Robert Landon, is an African-American male hired by appellee, Northwest Airlines (NWA), as an Equipment Services Employee (ESE) in September 1989. As an ESE, Landon loaded, unloaded, and cleaned NWA aircraft. Landon was employed pursuant to a bargaining agreement between NWA and the International Association of Machinists.

On March 2, 1992, Landon was unloading a NWA airplane using a conveyer-belt machine. During the unloading, the steering wheel of the belt loader caught on the aircraft cargo-bay door and broke the door handle. Landon reported the incident to his immediate supervisor, Robin Aponte. Aponte inspected the damage and told Landon to proceed to his next assignment. Aponte asserts that during a fifteen-minute interview of Landon, he noticed that Landon had bloodshot eyes, slurred his speech, and had difficulty understanding Aponte's questions.

Aponte reported the incident to his supervisors, Stephen Brice and Clifford Van Leuven. Brice and Van Leuven then located Landon. Van Leuven informed Landon that, because the accident was his third of the year, he could expect to have some time off and that he would be required to take a drug and alcohol test. Landon claims that Brice informed him that regulations required administration of the test following an accident. Landon's position with NWA was "non-safety sensitive." As a non-safety sensitive employee, the

2

only legitimate basis for testing Landon was for reasonable suspicion of alcohol or drug use.

Brice and Van Leuven then accompanied Landon to the San Francisco International Airport Medical Center, a facility independent from NWA, where Landon was required to execute a written consent to the drug test. At this time, Nurse Thomas Griglock completed a medical center form that indicated that the basis for the test was "post-accident."[1] Landon gave Griglock a urine sample, which was sealed and sent to an independent testing agency in Illinois. After providing the urine sample, Landon returned to the Ramp Office where Van Leuven suspended him for the rest of his shift. The following day, Van Leuven instructed Landon to report for his regular work schedule.

Landon's specimen tested positive for marijuana metabolites. On March 13, 1994, Brice and Van Leuven informed Landon by notice of discharge that his employment was terminated as a consequence of the NWA alcohol and drug policy violation.

Landon alleges that he was tested and subsequently fired for racially-motivated purposes. He further alleges that he was not reinstated for the same reasons and in retaliation for a Equal Employment Opportunity Commission (EEOC) complaint that he had lodged against NWA. Landon brings suit under 42 U.S.C. § 1981; Title VII, 42 U.S.C. § 2000(e) et seq.; the California Fair Employment and Housing Act, Cal. Gov't Code, Art. I, § 12940 et seq.; the California constitutional right of privacy; the San Francisco City and County ordinance-based right of privacy; and California public policy. Landon further claims that statements

---

[1]While Griglock could not remember what Brice had said was the basis for the test, he testified that he would have checked the testing basis stated by Brice. The "reasonable suspicion" basis, which the form provided as an option, was not checked.

made by his supervisor, Van Leuven, regarding his suspicions were defamatory.

DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. We review the granting of summary judgment de novo.

Although summary judgment should be used sparingly in the context of employment discrimination cases, Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action. Reich v. Hoy Shoe Co., 32 F.3d 361, 365 (8th Cir. 1994).

A.     The Discrimination Claims[2]

In a racial discrimination suit, the plaintiff must first make a prima facie case that i) he is a member of a protected class, ii) he is qualified for the position, iii) adverse action was taken against him, and iv) there is some evidence that would allow the inference of improper motivation. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue of racially-motivated action. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994). We find that Landon

_____

[2]Landon's suit claims that NWA's putative discriminatory actions violated Title VII, 42 U.S.C. § 2000(e) et seq., 42 U.S.C. § 1981, and the California Fair Employment and Housing Act, Cal. Gov't Code, Art. I, § 12940 et seq.

4

sufficiently established a prima facie case. Landon i) is African American, ii) was a qualified ESE, and iii) was fired by NWA. With respect to the fourth prong, Landon has presented evidence that could support his allegations that Van Leuven is a racist and that, as will be discussed, NWA's proffered business reason was pretextual. While this evidence would not require a reasonable juror to return a verdict for the appellant, it is sufficient to meet the fourth prong's minimal requirements of <u>some</u> evidence allowing for an inference of improper motivation.

Once the plaintiff makes a prima facie case, the burden shifts to the employer to articulate a legitimate business reason for its action. <u>McDonnell</u>, 411 U.S. at 802. In this case, NWA maintains that it tested Landon based on the reasonable suspicions of its supervisors that Landon was under the influence of drugs or alcohol. There is no dispute that NWA's reasonable suspicion policy constitutes a legitimate business reason. Having articulated a legitimate business purpose, the burden shifts back to the plaintiff to meet a more difficult standard: demonstrating that the defendant's articulated reason for its action was i) a pretext ii) for unlawful discrimination. See <u>St. Mary's Honor Ctr. v. Hicks</u>, 125 L.Ed.2d 407, 418 (1993).

As proof that the proffered reason for requiring the appellant to submit to drug testing was pretextual, the appellant points to the following evidence: i) statements made by Landon's supervisors on the night of the accident that he was being tested as a consequence of the accident; ii) forms, filed contemporaneously with the drug test, that fail to indicate the supervisors' suspicions; iii) evidence that the supervisors did not follow procedures consistent with reasonable suspicion (e.g., although NWA policy prohibits employees, who have been tested for reasonable suspicion, from driving motorized vehicles until the results of their test are returned, Landon's supervisors permitted Landon to drive home following the drug test and required him to return to

work the following day); iv) a medical affidavit asserting that the levels of marijuana metabolites found by the drug test were not such that the appellant's behavior would have been demonstrably affected; and v) affidavits of appellant's friends and relatives stating that Landon's behavior was normal on the night of the accident.

In response, NWA offers affidavits of the three supervisors. These affidavits assert that their suspicions were aroused by the appellant's atypical behavior. The defendant admits to acting abnormally, but attributes his behavior to his unhappiness regarding the accident. Reply Brief at 6 n.2. For the purposes of summary judgment, the proffered evidence must be taken in the light most favorable to the plaintiff.

Landon's evidence sketches a factual background by which objective reasonable suspicions could not be aroused. More importantly, the evidence of statements and conduct inconsistent with the supervisors' purported subjective suspicions could support an inference that the supervisors had no suspicions on the night of March 2, 1992. As such, the evidence is sufficient for a reasonable juror to reject NWA's proffered business reason.

For a jury to return a verdict in favor of the appellant, it would need to find that the reason provided for the drug test was not only a pretext, but that the actual motivation for the test was for racial discrimination. Hicks, 125 L.Ed.2d at 418-19. The Supreme Court in Hicks, however, stated that "rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, . . . [n]o additional proof of discrimination is required." Id. (footnote and citation omitted); accord Korbin v. University of Minnesota, 34 F.3d 698, 702-03 (8th Cir. 1994) ("[A plaintiff] may overcome summary judgment by producing evidence that, if believed, would allow `a reasonable jury to reject defendant's proffered reasons of

its actions.'").  Thus, while a verdict for the appellant can only occur after a finding of discrimination, rejection of the defendant's proffered reasons is enough at law to *sustain* such a finding.  Hicks, 125 L.Ed.2d at 418-19 n.4.

While the appellant must ultimately persuade the jury, in light of all of the evidence, that the motivation for the March 2nd testing was racial bias,[3] the evidence presented, which could support the conclusion that the proffered reason was pretextual, is sufficient to overcome a motion for summary judgment.  Therefore, we reverse the district court's order of summary judgment.

B.    Retaliation Claim

Landon claims that NWA's refusal to reinstate him after his termination was in retaliation for the EEOC charge alleging race discrimination that Landon filed against NWA on March 31, 1992.  The district court dismissed appellant's retaliation claim on two separate grounds:  i) it was barred by the statute of limitations, and ii) there was insufficient evidence for a reasonable juror to find for the appellant.

Landon claims that the retaliatory act was NWA's failure to reinstate him, not its decision to test or terminate him.  As evidence of NWA's alleged retaliation for a prior EEOC claim, appellant points to a message sent on May 9, 1992 from Van Leuven to NWA labor counsel regarding a grievance proposal to reinstate Landon.  The message stated:

---

[3]If NWA supervisors drug tested Landon for discriminatory motivations, NWA may not invoke its policy of zero tolerance to justify Landon's discharge, which would be the direct result of the discriminatory action.  To hold otherwise would invite such behavior.

> The point is that Landon tested positive. Landon lied in a company investigation, and Landon filed an EEO complaint against me (I guess). I do not care about the EEO implications because Landon tested positive and then lied about it.

According to the appellant, this proves that Landon was not reinstated because of the EEOC complaint. We do not agree. NWA has a clear policy that a positive drug test results in termination. Moreover, a terminated employee is reinstated only after he or she has admitted that a problem exists and agrees to seek treatment. Appellant refused to meet these conditions. We agree with the district court that the evidence presented does not support a claim of retaliation. Therefore, we affirm the dismissal of the retaliation claim.

## C.    Invasion of Privacy Claims

Appellant also claims that the drug testing was an infringement of his right of privacy in violation of both the state constitution and a city and county ordinance.

### 1. The California Constitution.

In dismissing the appellant's claim of an invasion of privacy in violation of the California Constitution, the district court held that drug testing an employee based on reasonable suspicions of drug or alcohol use substantially furthers the countervailing interest of employee and public safety. We review the district court's findings of state law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

In its analysis, the district court bypassed the initial burden placed on a plaintiff to demonstrate the elements of a prima facie case: i) a specific, identifiable, privacy interest; ii) a reasonable expectation of privacy under the circumstances; and iii)

8

a serious invasion of that privacy by the defendant's actions. <u>Hill v. NCAA</u>, 865 P.2d 633, 657 (Cal. 1994). Instead, the district court focused on NWA's defense that its actions substantially furthered countervailing interests. <u>See</u> <u>id.</u> In its analysis, the district court held that employee safety, public safety, and public confidence in safe air travel were sufficient countervailing interests[4] to justify the potential invasion of privacy resulting from a "reasonable suspicion" test.[5] We agree.

Implicit within the district court's order is the factual determination that appellant's position with NWA could adversely impact these countervailing interests of public safety. Appellant argues that his position was characterized as "non-safety sensitive" by his employment contract, and as such, he did not pose a threat to the safety and welfare of others. The contractual characterization of Landon's potential impact on public safety,

---

[4]Although appellant urges this court to adopt a "compelling interest" standard, the California Supreme Court irrefutably rejected this standard. <u>Hill</u>, 865 P.2d at 653-54. While the <u>Hill</u> court acknowledged the differences between its case and one arising from the employment context, it specifically stated that those differences would be "subject to the elements [announced], which require careful consideration of reasonable expectations of privacy and employer, employee, and public interests arising in particular circumstances." <u>Id.</u> at 667 n. 20. Appellant cites <u>Semore v. Pool</u>, 217 Ca.App.3d 1087 (Cal. Ct. App. 1990), and <u>Luck v. Southern Pac. Transp. Co.</u>, 218 Cal.App. 1 (Cal. Ct. App.), <u>cert. denied</u>, 498 U.S. 939 (1990), for the proposition that the "compelling interest" standard must be applied in the employment context. Both cases, however, were decided prior to <u>Hill</u> which specifically questioned their continued viability in light of its newly enunciated standard. <u>Id.</u>

[5]We note that the district court stated that requiring a drug test "either because of reasonable cause suspicion of drug influence or because of suspicion aroused due to the employee's damaging an airplane during his second accident in several weeks, substantially furthers NWA's countervailing interests." <u>Landon v. Northwest Airlines, Inc.</u>, No. 3-93-151, slip op. at 11 (D. Minn. Jan. 30, 1995). These alternatives merely suggest different bases by which reasonable suspicion might be aroused; it does not raise the more problematic issue of suspicionless drug testing.

9

however, is not controlling.  We accept the district court's finding of fact that Landon's employment position was a matter of public safety concern.

Nevertheless, appellant alleges that NWA's invasion of his privacy was not based on reasonable suspicion, but rather on racial prejudice.  For the reasons discussed above, the factual issue regarding the motivations for the drug test still need to be resolved by a jury.  Although the burden-shifting scheme enunciated by McDonnell and Hicks was developed within the context of Title VII, its influence beyond Title VII claims may be appropriate where alleged discriminatory motivations are at issue.  In this particular context, NWA raises its motivation as a defense to the claim of invasion of privacy.  While the analysis might be different for the two claims, the material issue is the same:  what was the motivation for drug testing Landon?  We have held that this question of fact must be determined by a jury.  If the trier of fact were to determine that NWA's motivations were discriminatory, NWA would not be able to assert its "reasonable suspicion" policy as a countervailing interest.

Therefore, we reverse the summary judgment with regards to this issue.  We note that the district court has made no determination regarding the appellant's prima facie case, and therefore we do not review this issue.[6]

---

[6]In light of Hill, any such consideration of a prima facie case will need to address the continued vitality of prior case law, which had held that employment drug testing violated the California Constitution.  See Hill, 865 P.2d at 667 n. 20.  Additionally, the impact of Landon's consent, which was considered in Hill under different circumstances, would need to be considered.

        2.  <u>The San Francisco Ordinance.</u>

        We affirm the district court's dismissal of appellant's claim based
on the San Francisco Workers Privacy Ordinance, S.F. Police Code § 3300A.
The district court held that although the airport, at which Landon was
employed, is owned and operated by the City and County of San Francisco,
the airport's location in San Mateo County removes Landon from the purview
of the ordinance's definition of employee:  a person working *within* the
City and County of San Francisco.  S.F. Police Code § 3300A.2(1).  The
governmental powers of San Francisco County do not extend beyond its
territorial boundaries to property that it owns.  The city attorney's
opinion, cited by appellant for the proposition that city employees are
covered even when beyond the territorial integrity of the city,
specifically bases its opinion of extraterritorial application on the fact
that the organization in question, the San Francisco Giants, had its
principal place of business within city limits.

D.    Defamation Claims

        Landon's defamation claim is based on Van Leuven's statements
regarding his suspicions that Landon was under the influence of drugs or
alcohol on the night of March 2, 1992.  Holding that there was no evidence
of malice by which a juror could return a verdict for the plaintiff, the
district court dismissed appellant's claim for defamation.  While there may
be sufficient evidence for a jury to find discriminatory motivations, and
hence malice, the district court appropriately dismissed appellant's
defamation claim given the evidence of a positive drug test.

        Landon bases his defamation claim on statements made by his
supervisor to other NWA employees regarding his suspicions of Landon's
behavior.  In essence, the supervisor's statements implied that Landon used
illicit drugs.  Based on the positive result of

                                    11

the drug test,[7] the district court found as a factual matter that the appellant did in fact use marijuana.  We see no clear error in this finding.  The truth of the allegations, in the context of defamation, provides an absolute defense.  See Lundquist v. Reusser, 875 P.2d 1279, 1282 n.5 (Ca. 1994).  Therefore, we affirm the district court's dismissal of the defamation claim.

E.    Public Policy Claims

Finally, Landon argues that his discharge violates California public policy.  The district court dismissed this claim.  California state courts have determined that the California legislature intended the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12900-12996, one of the three bases underlying Landon's discrimination claim, to be the sole remedy for discriminatory discharge.  See Cook v. Lindsay Olive Growers, 911 F.2d 233, 238 (9th Cir. 1990) (citing Strauss v. A.L. Randall Co., 144 Cal.App.3d 514, 519-21 (Cal. Ct. App. 1983) and Ficalora v. Lockheed Corp., 193 Cal.App.3d 489 (Cal. Ct. App. 1987)).  We are bound by California case law to reject this cause of action.  Therefore, we affirm the district court's dismissal of this claim.

CONCLUSION

NWA claims that its supervisors' decision to require Robert Landon to submit to a drug test was motivated by their reasonable suspicions that Landon was under the influence of drugs or alcohol.  The evidence presented is sufficient for a reasonable juror to reject this justification as pretextual.  For the claims for which NWA's motivations are a material issue, a jury must determine this

---

[7]Although appellant argues that the test has a disparate impact based on the amount of melanin in the skin, the district court rejected this assertion, noting that appellant's expert admitted that the hypothesis was merely a theory without any scientific corroboration.

12

question of fact.  Therefore, we reverse the district court's granting of summary judgment with respect to the claims of racial discrimination and violation of the state constitutional right of privacy.  We affirm the district court's dismissal of Landon's claims of retaliation, invasion of privacy in violation of San Francisco's privacy ordinance, defamation, and violation of public policy.  The case is hereby remanded to the district court for proceedings consistent with this opinion.

HANSEN, Circuit Judge, concurring.

I concur with our court's opinion because I believe Landon offered sufficient evidence raising genuine issues of material fact as to whether NWA's proffered reason for testing Landon was pretextual and whether NWA's actual reason was racial discrimination.  The grant of summary judgment in favor of NWA was therefore erroneous.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

13