**Tony HUTCHINS, Plaintiff,**

v.

**A.G. EDWARDS & SONS, INC., Defendant.**

**No. 4:96CV447 JCH.**

United States District Court,
E.D. Missouri,
Eastern Division.

July 28, 1997.

Rebecca S. Stith, St. Louis, MO, for Plaintiff.

Clifford A. Godiner, Thompson Coburn, St. Louis, MO, Thomas A. Mickes, Celynda L. Brasher, Peper and Martin, St. Louis, MO, for Defendant.

## MEMORANDUM AND ORDER

HAMILTON, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff has responded to this motion.

Plaintiff filed this suit on March 4, 1996, asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Missouri Human Rights Act ("MHRA"), Mo. Rev.Stat. §§ 213.010 *et seq.*, for alleged race discrimination and retaliation in his termination from Defendant A.G. Edwards. Defendant asserts that it terminated Plaintiff because he performed his job poorly. Plaintiff, on the other hand, contends that he was terminated because he is Black and in retaliation for filing an earlier race discrimination suit against Defendant ("*Hutchins I*"). Defendant filed the instant motion contending that no factual disputes exist and that it is entitled to judgment as a matter of law.

### I. Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509. The nonmoving party may not rest upon mere allegations or denials of her pleading. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in her favor. *Id.* at 255, 106 S.Ct. at 2513. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510–11.

### II. Facts

Plaintiff and Defendant have provided differing versions of the facts, and the Court must view the facts in the light most favorable to the non-moving party, here, Plaintiff. Plaintiff filed his original lawsuit against Defendant in August 1993. In March of 1994, Defendant transferred Plaintiff from his position as CCA Buy Clerk in the Money Funds Department to CCA Sell Clerk in the Money Funds Department. Plaintiff did not request the transfer and, in fact, told his supervisor Eric Moyle that he did not want to be transferred. Mr. Moyle transferred Plaintiff to

888

the Sell Clerk position, nonetheless, and did not ask anyone else if they would like to transfer. Plaintiff had never heard of such an involuntary transfer happening to any other A.G. Edwards employee.

After his transfer, Plaintiff found that he could not complete his new duties within the eight hour day. His supervisor, however, did not allow him to work overtime to complete his work. Other employees worked overtime to complete their tasks. Additionally, at least one employee who could not finish his work within eight hours had part of his workload transferred to other employees and received a pay increase.

Mr. Moyle and Michael Bafaro expressed concern that Plaintiff was not completing his job by 4:30 p.m. and kept a close eye on Plaintiff in his new position. Eventually, Mr. Moyle and Mr. Bafaro terminated Plaintiff on June 24, 1994. At the meeting in which they terminated Plaintiff, allegedly for not doing enough work in his new position, Mr. Moyle commented to Plaintiff that he "could not just sue the company and walk around doing what [he] wanted." Plaintiff's Deposition, pp. 50–51. Further, at Plaintiff's unemployment compensation hearing, Mr. Moyle stated that he had placed Plaintiff on a 90–day probationary period and that he terminated Plaintiff for insubordination. Plaintiff did not know that he had been placed on probation, and Mr. Moyle does not recall telling Plaintiff or showing him the memorandum.

Plaintiff and the other *Hutchins I* plaintiffs have all expressed that they were more closely monitored or given more work after filing suit against Defendant. Additionally, Virgil Houston and Garry Prince, both plaintiffs in *Hutchins I* have resigned from A.G. Edwards.

### III. Analysis

#### A. Race Discrimination

■ Summary judgment is appropriate in employment discrimination cases where the plaintiff fails to demonstrate a factual dispute as to each element of the prima facie case. *Wilson v. International Business Machines Corp.*, 62 F.3d 237, 240 (8th Cir.1995) (quoting *Bialas v. Greyhound Lines. Inc.*, 59 F.3d 759, 762 (8th Cir.1995)). Plaintiff may show discrimination under Title VII[1] by either direct or indirect methods of proof. *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991). When a plaintiff produces direct evidence of race discrimination a mixed-motive analysis applies. Plaintiff must prove that race was a "motivating factor" in the employer's decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247, 109 S.Ct. 1775, 1788–89, 104 L.Ed.2d 268 (1989); *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir.1993); *Beshears v. Asbill*, 930 F.2d at 1353. The defendant "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." *Beshears*, 930 F.2d at 1353 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989)).

■ When a plaintiff relies on indirect evidence of discrimination, courts apply the burden shifting standards enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* Plaintiff has the initial burden of establishing a prima facie case of discriminatory treatment. *Id.* " 'The prima facie case, in the absence of an explanation from the employer, creates a presumption that the employer unlawfully discriminated against the employee.' " *Moschetti v. Chicago. Central & Pacific R.R. Co.*, 119 F.3d 707, 709–10(8th Cir.1997) (quoting *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir.1996)). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the plaintiff. *Saint Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp. v. Green*,

---

1. The standards governing Plaintiffs Title VII claim also apply to Plaintiffs MHRA claims. *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668 (8th Cir.1994); *Lane v. Ground Round. Inc.*, 775 F.Supp. 1219. 1223 (ED. Mo.1991). Accordingly, the Court's discussion of Plaintiffs Title VII claims encompasses Plaintiffs MHRA claims.

411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Landon v. Northwest Airlines. Inc.,* 72 F.3d 620, 624 (8th Cir. 1995). The plaintiff retains the ultimate burden of persuasion, however, and must prove that the defendant's asserted reasons are pretextual and that plaintiffs age was a determining factor in the employment action. *Saint Mary's Honor Center,* 509 U.S. at 506–08, 113 S.Ct. at 2747; *Landon,* 72 F.3d at 624–25.

Plaintiff, however, need not prove every element of his case at the summary judgment stage; he "need only show evidence of a material factual dispute." *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) as basis for reversing summary judgment because plaintiff demonstrated factual dispute under *McDonnell Douglas* theory). *See also Perry v. Kunz,* 878 F.2d 1056, 1061–62 (8th Cir. 1989) (reversing summary judgment because plaintiff showed factual dispute under *Price Waterhouse* theory).

Both 42 U.S.C. § 1981 and Title VII require Plaintiff to meet the same standard to state a prima facie case. *See Richmond v. Board of Regents of University of Minnesota,* 957 F.2d 595 (8th Cir.1992). To establish a prima facie case of race discrimination, Plaintiff must establish that "i) he is a member of a protected class, ii) he is qualified for the position, iii) adverse action was taken against him, and iv) there is some evidence that would allow the inference of improper motivation." *Landon,* 72 F.3d at 624.

In the instant case, Defendant disputes both the prima facie case and that Plaintiff can show that Defendant's reasons for his transfer and subsequent termination was a pretext for race discrimination. Defendant claims that Plaintiff cannot show that his transfer was adverse, because it was a lateral transfer; that Plaintiff cannot produce evidence allowing an inference that his transfer was the result of improper motivation; and that Plaintiff cannot demonstrate that Defendant's articulated reason for his transfer is a pretext for race discrimination. Furthermore, Defendant contends that Plaintiff cannot show, in relation to his termination, that he was qualified for his position; that Plaintiff cannot produce evidence allowing an inference that his termination was a result of impermissible race discrimination; or that Defendant's articulated reason for his termination is a pretext for race discrimination. Plaintiff's claims are that Defendant transferred then terminated him because of race discrimination. Plaintiff does not assert that these claims are separate, but rather that the transfer led to the termination.

About seven months after Plaintiff filed *Hutchins I*[2] in August 1993, Defendant transferred him from his position as CCA Buy Clerk in the Money Funds Department to the position of CCA Sell Clerk within the same department. Plaintiff did not ask for the transfer and, in fact, requested that Defendant not transfer him. Defendant asserts that it no longer needed two CCA Buy Clerks and transferred Plaintiff to the Sell Clerk position because the other Buy Clerk had already been cross-trained in the Sell Clerk's duties. Defendant never asked the other Buy Clerk if he would like to be transferred to the Sell Clerk position. Plaintiff claims that no one at A.G. Edwards had ever been transferred to a position he did not want and that his transfer, although lateral, was a result of race discrimination. Defendant does not dispute that Plaintiff did not want the position nor that employees at A.G. Edwards are not transferred to positions they do not want. Rather Defendant states that having two people able to do both Buy Clerk and Sell Clerk jobs made better business sense, so it transferred Plaintiff rather than the other Buy Clerk. Defendant then terminated Plaintiff on June 24, 1994, for his

---

**2.** Plaintiff, Eric Wynn, Virgil Houston, and Garry Prince filed *Hutchins I* originally in August 1993. Subsequently the Court dismissed *Hutchins I* without prejudice. The original *Hutchins I* plaintiffs and many other African–American employees refiled *Hutchins I* in early 1995. *Hutch-* *ins I* was based on allegations of race discrimination at A.G. Edwards in the terms and conditions of the plaintiffs' employment. It did not allege that Plaintiff Hutchins had been transferred and terminated because of his race.

inability complete all the tasks required in his new position.

Defendant contends that Plaintiff's transfer was not an adverse employment decision and that Plaintiff cannot produce evidence allowing an inference that his transfer was the result of improper motivation. Plaintiff, however, was terminated within three or four months of his transfer to the CCA Sell Clerk. Such evidence creates a factual dispute as to whether or not his transfer was an adverse employment decision. Defendant also claims that Plaintiff was not qualified for the Sell Clerk position. Defendant, however, transferred Plaintiff to this position without a request from Plaintiff. At some point, Defendant must have determined that Plaintiff was qualified for the position. Certainly, that Defendant transferred Plaintiff into the position presents a factual dispute as to whether Plaintiff was qualified for the position.

Additionally, Defendant had never expressed displeasure with Plaintiff's performance as CCA Buy Clerk, but after moving Plaintiff to Sell Clerk, Defendant kept a close watch on him and continually expressed dissatisfaction with Plaintiff's performance. This evidence, in conjunction with Plaintiff's statement that Defendant had never before transferred an employee to an unwanted position, creates a factual dispute as to whether Defendant's motivation for transferring Plaintiff was impermissible race discrimination.

Defendant further contends that it transferred Plaintiff because Defendant wanted two people to be able to perform the Sell Clerk's functions and that the other Buy Clerk had already been cross trained as a Sell Clerk. Next, Defendant asserts that it terminated Plaintiff because Plaintiff could not handle all the Sell Clerk functions. The evidence Plaintiff presents creates a factual dispute as to the validity of Defendant's articulated nondiscriminatory reason for Plaintiffs transfer and termination. Specifically, Plaintiff presents evidence of white employees who, rather than being terminated for an inability to complete their tasks, either were permitted to work overtime on a regular basis or had some of their duties shifted to other employees. Furthermore, Plaintiff has documented instances of overt racism directed at other African–American employees of A.G. Edwards. Based on these disputes of fact, the Court must deny Defendant's motion for summary judgment on Plaintiffs claims of race discrimination.

### B. Retaliation

■ A claim of unlawful retaliation does not depend on the merits of the underlying claim of discrimination. *Cobb v. Anheuser Busch. Inc.*, 793 F.Supp. 1457, 1489 (E.D.Mo.1990) (citing *Davis v. State University of New York*, 802 F.2d 638 (2d Cir. 1986)). "Furthermore, Title VII's prohibition against retaliatory discrimination protects activities ranging from the filing of a formal complaint to expressing a belief that the employer has engaged in discriminatory practices." *Id.* at 1489–90. To establish a prima facie case of retaliation, Plaintiff must show that: "1) she complained of discrimination; 2) defendant took adverse action against her; and 3) the adverse action was causally linked to the complaint of discrimination." *Marzec v. Marsh*, 990 F.2d 393, 396 (8th Cir.1993) (citing *Martin v. Local 1513 & District 118 of International Ass'n of Machinists and Aerospace Workers*, 859 F.2d 581, 585 (8th Cir.1988) (other citations omitted)). A Plaintiff may establish the third element of a claim for unlawful retaliation "by proof that the [adverse action] followed the protected activity *so closely in time* as to justify an inference of retaliatory motive." *Hargens v. United States Department of Agriculture*, 865 F.Supp. 1314, 1329–30 (N.D.Iowa, 1994) (emphasis added) (citing *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir.1993 (citation omitted)). *See also Rath v. Selection Research. Inc.*, 978 F.2d 1087, 1090 (8th Cir.1992) (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); *Couty v. Dole*, 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal connection); *Keys v. Lutheran Family and Children's Services of Missouri*, 668 F.2d 356, 358 (8th Cir.1981) (less than two months

sufficient proximity for causal connection); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), cert. denied, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981) (twenty three days sufficient proximity for causal connection)).

 The Plaintiff ultimately must show that "the employer's retaliatory motive was the 'but for' cause of the adverse employment decision." *Cobb v. Anheuser Busch, Inc.,* 793 F.Supp. 1457, 1489 (E.D.Mo.1990). "Classic examples of adverse employment actions under Title VII include an employer's discharge, failure to promote, or a failure to hire an employee because of a statutorily protected activity in which the employee has engaged." *Callanan,* 903 F.Supp. at 1300.

 Plaintiff contends that Defendant transferred and terminated him in retaliation for filing the *Hutchins I* lawsuit alleging race discrimination based on Defendant's failure to promote African American employees. Defendant asserts that Plaintiff has presented no direct evidence of retaliation, because the statement Plaintiff offers is not sufficiently blatant. Plaintiff has stated that on the day he was terminated, his supervisor Mr. Moyle told him he "could not just sue the company and walk around doing what [he] wanted." Plaintiff's Deposition, pp. 50–52. Regardless of whether such evidence standing alone is sufficiently blatant to provide Plaintiff with a case of retaliation, the statement evidences Defendant's continuing awareness of Plaintiff's lawsuit at the time of his termination. "The passage of time between events does not by itself foreclose a claim of retaliation; rather, it weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." *Smith v. St. Louis University,* 109 F.3d 1261, 1266 (8th Cir.1997).

Although Defendant transferred Plaintiff seven months after *Hutchins I* was filed and terminated him ten months after that lawsuit was filed, Defendant's statement provides Plaintiff with evidence of a causal link between the filing of *Hutchins I* and the adverse employment actions taken against him. The Court has already determined that a factual dispute exists as to whether Plaintiff's transfer and subsequent termination can be considered adverse employment. Based on this earlier finding and the evidence of a causal connection between the filing of *Hutchins I* and Plaintiff's eventual termination, the Court finds that a factual dispute exists as to Plaintiff's prima facie case of retaliation.

Again Defendant asserts that its reason for terminating Plaintiff was his inadequate job performance. Plaintiff, however, stated that he did not ask for the transfer to the CCA Sell Clerk position and that he asked not to be transferred. Based on statements of Defendant's regular practice regarding lateral transfers, Plaintiff's involuntary transfer provides an inference that Defendant treated Plaintiff differently from other employees. Further, Plaintiff has provided affidavits from the other three plaintiffs in *Hutchins I.* Of the four original Plaintiffs, only one, Eric Wynn, still works for Defendant. Garry Prince claims that management became increasingly hostile to him after *Hutchins I* was filed and that he eventually left his position. Affidavit of Garry Prince, p. 1. Virgil Houston contends that his work life became increasingly unbearable after the lawsuit was filed, that he received a threatening letter through inter-office mail on which Defendant never took action either to protect him or to determine who sent it, and that he finally resigned. Affidavit of Virgil Houston, pp. 1–2.

The evidence provided by Plaintiff could certainly raise a reasonable inference that Defendant retaliated against him if the jury were to believe Plaintiff's evidence. Accordingly, the Court finds that a dispute of material fact exists as to whether Defendant terminated Plaintiff in retaliation for filing the race discrimination action in August 1993. The Court, therefore, denies Defendant's motion for summary judgment.

In accordance with the foregoing,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [docket # 24] is **DENIED.**