Filed 10/4/23  Chapman v. St. Joseph Health System CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LYNN CHAPMAN, | |
| Plaintiff and Appellant, | G061220 |
| v. | (Super. Ct. No. 30-2019-01092836) |
| ST. JOSEPH HEALTH SYSTEM, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, John C. Gastelum, Judge.  Affirmed.

Guerra Law and Jason E. Guerra for Plaintiff and Appellant.

Davis Wright Tremaine LLP, Giancarlo Urey and Teresa Fitzgerald for Defendant and Respondent.

Plaintiff Lynn Chapman sued St. Joseph Health System (St. Joseph Health) for sex and age discrimination and retaliation, all in violation of the California Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq. The complaint also contained claims for wrongful termination in violation of public policy and intentional and/or negligent infliction of emotional distress, both of which were entirely based on the same allegations underlying Chapman's FEHA claims.

Almost two years after Chapman filed her complaint, St. Joseph Health successfully moved for summary judgment, or alternatively, for summary adjudication, on grounds, inter alia, no triable issue of material fact existed as to any of Chapman's claims.

We affirm. We have independently reviewed the record, including the evidence proffered by the parties. The record is devoid of any evidence of discriminatory pretext. There is also no evidence in the record showing St. Joseph Health retaliated against Chapman for engaging in any FEHA-protected activity. In addition, there is no evidence of outrageous conduct sufficient to establish a claim for intentional infliction of emotional distress as a matter of law. Given the absence of a triable issue of material fact as to Chapman's discrimination and retaliation claims, and the lack of any evidence St. Joseph Health engaged in outrageous conduct, summary judgment was properly granted.

## SUMMARY OF UNDISPUTED MATERIAL FACTS AND ADDITIONAL EVIDENCE PRODUCED BY CHAPMAN IN OPPOSITION TO THE MOTION

### I.

### CHAPMAN IS HIRED BY ST. JOSEPH HEALTH

In 1987, Chapman was employed as a medical secretary by St. Joseph Health's predecessor, South Coast Medical Center. For 22 years, Chapman worked in

South Coast Medical Center's emergency department in either a clerical support role or as an emergency room technician.

After St. Joseph Health acquired South Coast Medical Center in 2009, Chapman was offered the position of patient care technician (PCT) at Mission Hospital-Laguna Beach (formerly South Coast Medical Center). In December 2010, Chapman was promoted to the "PCT II" position, a position she held until the end of her employment with St. Joseph Health in 2019. PCTs at Mission Hospital-Laguna Beach provide basic but important nursing care for patients (e.g., assisting with activities of daily living, hygiene, feeding) under the general supervision of a registered nurse. "The position required, among other things, independent judgment, good verbal communication, 'positive interpersonal skills' and the 'ability to work with others in a flexible cooperative manner.'"

Chapman reported to nurse manager Mary Olivas from 2009 until 2016. Chapman received "relatively positive yearly Performance Appraisals for the years 2010–2016" with an overall rating of "On Target" in 2016, and before that, an "Above Target" rating in the years 2010 through 2015.[1] After Olivas was replaced in that role by interim nurse manager Josephine Zarnegar, who later became the nurse manager in May 2017, Chapman reported to Zarnegar. Both Olivas and Zarnegar are older than Chapman.

Chapman's relationship with Zarnegar became strained when Zarnegar became Chapman's supervisor as charge nurse. Chapman felt she could not have a "two-way conversation" with Zarnegar. Zarnegar yelled at Chapman and others, criticized Chapman for things out of her control, and generally failed to treat people with respect.

Chapman was offended Zarnegar commented that Chapman seemed unhappy. Chapman also took offense when charge nurse Nicole Hooper advised

---

[1] Overall performance can be rated in one of the following categories: "Needs Improvement," "Developmental Opportunity," "On Target," "Above Target," and "Exceptional Performance."

Chapman to "'stop bitching'" and labeled her a "'complainer.'" Chapman was likewise offended when another charge nurse, who was three years older than Chapman, responded to Chapman's complaint about using a new earpiece at work by saying: "'It gets harder when you get older.'"

## II.

### THE VERBAL WARNING

On August 24, 2017, Zarnegar gave Chapman a "verbal warning," which is the "lowest level of discipline" (other than coaching which includes comments in annual performance reviews) imposed by St. Joseph Health. That verbal warning was documented on an employee conference record which stated:

"**Nature of problem (specific and behavioral, list facts, dates etc.):** Disruptive Behavior, poor communication and lack of teamwork, choosing not to do assigned responsibilities[.]

"**State the Impact:** Created an uncomfortable and disruptive situation when you started the shift openly verbalizing your unhappiness. This makes for an uncomfortable work environment for the staff. The communication loop is hampered by your reactions like getting angry and walking away when the staff attempts to have dialogue with you. The staff has shared that their comfort level with you has diminished due to your reactionary behavior. This compromises the patient care arena and teamwork model which is crucial for safe practice[.]

"**Expectations/Recommendations:**

"-To build trusting and open dialogue with team incorporating Team STEPPS methodology[.]

"-To start your shift with a positive attitude or by not sharing your negative thoughts openly with the team.

"-To follow the PCT checklist, especially completing the crucial responsibilities including components which affect your co[-]workers at shift change.

4

"**Expected Behavior/Performance:**

"-You will be positive and engaging with your staff[.]

"-Communicate in a respectful manner with co-workers, family members, patients and physicians[.]

"-You will seek out the charge nurse and proper chain of command when issues are concerning to you[.]

"-You will participate in open communication during handoffs[.]

"-You will complete all assigned tasks and responsibilities[.]

"Failure to meet these requirements or to maintain satisfactory performance will result in further disciplinary action, up to and including immediate termination."

Chapman had never before (or thereafter) received any other similar discipline during her employment with St. Joseph Health. St. Joseph Health never demoted her, reduced her hours, or cut her pay.

III.

THE 2017 PERFORMANCE REVIEW

Chapman's 2017 performance review, dated October 1, 2017 and conducted by Zarnegar, set forth an overall rating of "On Target" for the preceding year. The evaluation also contained the following statement: "Lynn is a conscien[t]ious employee. She struggles when tasked with multiple requests as well as prioritization. She is respected by her peers but they have voiced uneasiness having discussions with her as they see her [as] difficult to approach at times. The staff is challenged with effective communication with her as she is perceived as temperamental and closed to receiving feedback. Lynn is a champion of promoting safety for the department and is eager to share her concerns. I would like to see Lynn foster [two-]way communication with her peers in order to build trust and constructive messaging. I would also like Lynn to share her knowledge by teaching a splinting class to the staff."

5

IV.

CHAPMAN SEEKS TO CHALLENGE THE VERBAL WARNING

On October 12, 2017, Chapman e-mailed St. Joseph Health's human resources department stating: "I am filing a grievance. I contest a verbal warning given to me on 8-24-2017. The statements were untrue and unwarranted. I am requesting an amendment with comments to the verbal warning." Six days later, Chapman e-mailed Vanessa Begin of the human resources department which began: "After further consideration, I request that the verbal warning given to me on 8-24-17 be removed from my record and that action . . . be taken to ensure that my management discontinue their hostile speech and actions against me. In my opinion, the unprofessional communication provided by my management team causes unnecessary conflicts leading to diminished performance levels and diminished well being of myself, my department, and ultimately patient care." In her three-page e-mail to Begin, Chapman provided her "perspective of what was perceived as disruptive behavior," and "answer[ed] the claim that [she] choose[s] not to do assigned responsibilities." (Boldface omitted.) She stated she believed the warning was vague and "an example of the uncomfortable and unfriendly communication that is typical of my manager Jo Zarnegar. Who in my opinion discourages me from bringing up issues with my department that I might need my managers help with and attacks me as a person leaving me without my own dignity." Nowhere in her e-mail does Chapman suggest she felt discriminated against because of her gender or age, or in retaliation for previously reporting any FEHA-related concerns.

On October 24, 2017, Chapman met with Begin and human resources business partner Patrick Clarke regarding the issues raised in her e-mail and her request to have the verbal warning removed from her employment record. After listening to

6

Chapman, Begin and Clarke informed her they could not remove the verbal warning because Chapman had failed to file a timely grievance pursuant to the grievance policy.[2]

V.

CHAPMAN BEGINS AN APPROVED MEDICAL LEAVE OF ABSENCE

Following the October 24 meeting, Chapman worked one last shift at Mission Hospital-Laguna Beach on October 28, 2017. She then went out on an approved medical leave of absence for a medical/mental health condition beginning on October 31, 2017; she never returned to work. Chapman submitted evidence she saw a psychologist on October 31, 2017 and submitted to a further mental health evaluation the following month. She was thereafter diagnosed with major depressive disorder, single episode and post-traumatic stress disorder. She submitted evidence of subsequent reports affirming those diagnoses.

Shortly after beginning her medical leave, on November 9, 2017, Chapman asked Begin to attach the following statement to her performance evaluation: "I am glad to hear I am considered a conscien[tious] employee. I would like to share that one of the things I like most about being a PCT in the ER at MLB is the multitasking aspect of the position. However, it can be difficult to meet all the multitasking expectations of the department being the only PCT. This is compounded by the large turnover in charge nurses and staff as well as the varying expectations of the staff. I will also admit that it has been more of a challenge for me to stay focused since the implementation of the ear[]piece. With several alarms going off and a patient talking to you while a

---

[2] St. Joseph Health's grievance procedure requires an employee to submit a written grievance "to his or her immediate supervisor within 7 calendar days after the problem becomes known to the employee." At her deposition, St. Joseph Health's Director of Human Resources Terri Covert testified: "[T]here have been some situations where there have been mitigating circumstances where that grievance has arrived a day or two later that we may still put [it] into the grievance process." Here, Chapman attempted to submit a grievance over a month after the deadline passed to do so. No evidence was presented showing any similar mitigating circumstances were present in this case.

7

conversation between a nurse and a doctor are going on in my earpiece has made it difficult to stay focused. I have brought many safety concerns forward over the past year. It is often difficult to do. However, I value integrity and will be inflexible if I feel concerned about the best interests of patients, staff or the department. I believe that two-way communication is imperative and have been disappointed when the tools the department once had such as debriefings have fallen by the way side. These are some issues that I have attempted to communicate through the proper chain of command since my review in hopes to overcome any obstacles to improve what I can." Again, Chapman did not allege any FEHA-related discrimination or retaliation conduct in her statement.

Begin agreed to attach Chapman's statement to her 2017 performance evaluation. Begin refused Chapman's request to also attach a written "reflection" by another charge nurse on his "communication experiences" with Chapman at Mission Hospital-Laguna Beach.

Although in January 2018 Chapman exhausted her leave pursuant to the Family Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.) and the Moore-Brown-Roberti Family Rights Act (Gov. Code, § 12945.2), her health care provider extended her leave multiple times and St. Joseph Health accommodated Chapman by granting her additional leave time. At Chapman's request, St. Joseph Health extended Chapman's leave at least five separate times over the course of almost two years.

VI.

AFTER CHAPMAN FAILS TO RESPOND TO COMMUNICATIONS ABOUT HER LEAVE OF
ABSENCE AND ABILITY TO RETURN TO WORK, HER EMPLOYMENT IS TERMINATED

In April 2019, July 2019, and again in August 2019—almost two years after Chapman began her leave of absence—Begin left telephone messages for Chapman to connect with her regarding Chapman's leave of absence. On August 23, 2019, Chapman filed a complaint with the Civil Rights Department (then known as the

8

California Department of Fair Employment and Housing) and filed the instant lawsuit against St. Joseph Health.

Meanwhile, Begin had received no response from Chapman. On August 28, 2019, Begin sent Chapman a letter stating, in relevant part: "Given the on-going indefinite nature of your health condition and inability to return to work, we will need to move forward with processing the end of your employment. However, I want to stress that if you see any other alternatives or accommodations that would enable you to return to work, please let me know by 9/9/2019. If we do not hear from you before 9/9/2019, we will begin processing the end of your employment. Please know that you will be fully eligible for rehire with Mission Hospital, and if you see future open positions, please do not hesitate to let me know of your interest and any questions you may have." (Boldface omitted.)

Chapman did not respond to Begin's letter. Accordingly, St. Joseph Health processed the termination of Chapman's employment on September 9, 2019, nearly two years after she had last reported to work. That same day, Chapman served her complaint on St. Joseph Health.

Chapman was 53 years old when she started her medical leave of absence and was 55 years old when her employment was terminated. St. Joseph Health filled Chapman's prior position with a female who is older than Chapman. It is also undisputed "[t]he vast majority of employees in the Emergency Department during [Chapman]'s employment were women, and several were older than [Chapman], including Olivas and Zarnegar. In terms of PCTs in the Emergency Department, half were male and half were female, and [Chapman] was not the oldest PCT."

As of November 23, 2020, Chapman had not been released to return to work.

9

# PROCEDURAL HISTORY

## I.

### THE COMPLAINT

Chapman's complaint, filed in September 2019, contains claims against St. Joseph Health for (1) sex discrimination in violation of FEHA (first cause of action); (2) age discrimination in violation of FEHA (second cause of action); (3) retaliation in violation of FEHA (third cause of action); (4) wrongful termination in violation of public policy (fourth cause of action); and (5) intentional and/or negligent infliction of emotional distress (fifth cause of action).

## II.

### ST. JOSEPH HEALTH'S MOTION FOR SUMMARY JUDGMENT

In March 2021, St. Joseph Health filed a motion for summary judgment or, in the alternative, for summary adjudication. St. Joseph Health argued there were no triable issues of material fact and Chapman's claims failed as a matter of law. In the alternative, St. Joseph Health moved for an order adjudicating several specified issues. In support of the motion, St. Joseph Health produced, inter alia, excerpts from Chapman's deposition and the declarations and deposition testimony of Teresa Fitzgerald (St Joseph Health's counsel), Begin, and Zarnegar, along with attached exhibits.

## III.

### CHAPMAN FILES AN OPPOSITION TO THE SUMMARY JUDGMENT MOTION

On June 14, 2021, Chapman filed a written opposition to the motion, in support of which she submitted, inter alia, her own declaration, and excerpts from the depositions of Begin and Covert. Chapman did not contend she was unable to complete discovery before opposing the motion for summary judgment and did not seek a continuance of the motion for summary judgment in her opposition. In her opposition, she addressed only some of the grounds raised in the motion for summary judgment, arguing: (1) the motion for summary judgment "should be both granted and denied in

10

part as set forth herein and within [Chapman]'s concurrently filed opposition papers, which are incorporated by reference"; (2) Chapman's FEHA-related claims are not time-barred because "the timing of [her] severe 'PTSD' diagnosis during employer-approved leave establishes both a continuing violation and exhaustion of administrative [remedies]"; and (3) Chapman's "administrative remedies were unequivocally exhausted." (Boldface and some capitalization omitted.)

IV.

CHAPMAN FILES A MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND FILES AN EX PARTE APPLICATION SEEKING, INTER ALIA, TO ADVANCE THE HEARING

Shortly after Chapman filed her opposition to the motion for summary judgment, on June 21, 2021, she filed a motion for leave to file a first amended complaint. The notice of motion stated: "This motion is being made on grounds that Plaintiff's medical condition and diagnosis with post-traumatic stress disorder ('PTSD') caused as a result of the toxic workplace environment she endured by Defendants has created extraordinary impediments to Plaintiff and her counsel's ability to fully communicate, such as recall facts and details of events, and solidify a 'game plan' as to which causes of action should be dismissed and which should be pursued. Prior to this development, while there were peaks of progress, there were also valleys of stagnation creating ongoing uncertainty and counsel's inability to promptly get information requested which accumulated over time. This motion is being presented at Plaintiff's first available opportunity for the reasons set forth herein." Chapman's counsel's declaration was filed in support of the motion stating, inter alia, he was able to conduct

11

the discovery he thought was needed with her cooperation because she had "improved significantly" during that time.[3]

A proposed first amended complaint was not filed with the motion. Instead, attached to the motion is a document entitled "Appendix of Proposed Changes," listing Chapman's proposed amendments to the complaint including to "[r]emove causes of action for Employment Discrimination Based on Sex, Gender, and Age, and Negligent Infliction of Emotional Distress" and to add a cause of action for "Constructive Discharge in Violation of Public Policy."

Concurrently with the motion seeking leave to file a first amended complaint, Chapman filed an ex parte application for orders: (1) continuing the date of trial by 180 days (Chapman's papers state a trial date of August 2, 2021 had been set in the case); (2) providing an "Extension to Discovery Proceedings" (without specifying what if any discovery Chapman might conduct); (3) specially setting the hearing on the motion for leave to file a first amended complaint; and (4) continuing the hearing on St. Joseph Health's summary judgment motion (then set for hearing on June 22) by 120 days "to allow [Chapman] to properly plead her claims."

Chapman's declaration, filed in support of her ex parte application, stated: "When this case was filed, [PTSD] symptom flare ups substantially interfered with my ability to recall facts and answer questions, but as of early June 2021 I have reached a point where I believe my attorneys are in possession of all the material facts necessary to continue advocating on my behalf which has been made possible due to the passage of time and the continued patience of my attorneys." She further stated in her declaration

---

[3] Chapman's counsel stated in his declaration: "Commencing in or about 2020, when discovery proceedings demanded more communication and questions/answers as to various fact-finding issues, while Ms. Chapman had improved significantly, it was apparent Ms. Chapman was still struggling. However, with a little patience and understanding, *I was able to get what I needed to cooperate during discovery*, but her limitations were still obvious every time we talked." (Italics added.)

12

she was "fully on board" with her attorneys' requests made on her behalf and she possessed "the good faith belief that with a 6-month trial continuance, [she] would have enough time to further recover and be at [her] best for trial." In her counsel's declaration filed in support of the ex parte application, he stated that since filing the complaint, "Plaintiff has diligently engaged in discovery, which includes taking at least 4 deposition[s] of Defendant's officers/employees and propounding written discovery. In addition, Plaintiff has complied with discovery propounded by Defendant and the parties even attended private mediation . . . last fall without success."

## V.

### THE TRIAL COURT GRANTS CHAPMAN'S EX PARTE APPLICATION BUT LATER DENIES HER MOTION SEEKING LEAVE TO FILE AN AMENDED COMPLAINT

The trial court granted Chapman's ex parte application and (1) advanced the October 5, 2021 hearing date on the motion for leave to file an amended complaint to July 27, 2021; (2) continued the June 29, 2021 hearing date on the motion for summary judgment to November 30, 2021; and (3) continued the August 2, 2021 jury trial date to January 31, 2022. The court later continued the hearing on the motion for leave to file an amended complaint to September 7, 2021.

Following the hearing on the motion seeking leave to file an amended complaint, the trial court denied the motion. In its minute order the trial court explained, inter alia, Chapman was free to dismiss her sex/gender and age discrimination claims without seeking to amend the complaint, the constructive discharge theory was addressed in the motion for summary judgment, Chapman failed to explain her failure to seek an amendment sooner, and the motion was solely based on counsel's declaration stating Chapman's PTSD caused significant delay in his communication with her.

Chapman does not challenge the trial court's denial of her motion seeking leave to file an amended complaint in this appeal. She also did not dismiss her

13

discrimination claims or negligent infliction of emotional distress claim before the hearing on the motion for summary judgment.

## VI.

### THE TRIAL COURT GRANTS THE MOTION FOR SUMMARY JUDGMENT

The trial court granted the motion for summary judgment on the ground there were no triable issues of material fact as to any of Chapman's claims. The trial court overruled Chapman's single objection to St. Joseph Health's evidence. It also sustained certain of St. Joseph Health's evidentiary objections, and overruled other specified evidentiary objections. No party challenges the trial court's evidentiary rulings in this appeal.

Judgment was entered in favor of St. Joseph Health and against Chapman. Chapman appealed.[4]

---

[4] Inexplicably, notwithstanding Chapman's failed effort to amend her complaint to remove both FEHA discrimination claims and the negligent emotional distress claim, Chapman's appeal is not limited to challenging the retaliation and intentional infliction of emotional distress claim. At oral argument, however, Chapman's counsel conceded Chapman was not challenging summary judgment as to the FEHA discrimination claims.

In the respondent's brief, St. Joseph Health argues "Chapman's unreasonable arguments on appeal support[] an attorneys' fees award under the FEHA." (Boldface and some capitalization omitted.) St. Joseph Health did not file the required motion for sanctions pursuant to California Rules of Court, rule 8.276(a)(1). We therefore deny St. Joseph Health's request for sanctions. This ruling does not affect any party's right to request attorney fees on appeal through a properly noticed motion in the trial court.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

"'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.] A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

### II.

#### DISCRIMINATION CLAIMS

Although Chapman has abandoned any challenge to the grant of summary judgment as to her sex and age discrimination claims, we nevertheless review those claims because her remaining claims are related to if not entirely dependent upon the merit of the discrimination claims.

A. *Burden-shifting Standard Applicable to FEHA Discrimination Claims*

In *Wilkin v. Community Hospital of Monterey Peninsula* (2021) 71 Cal.App.5th 806, 820–822 (*Wilkin*), a panel of this court summarized the burden-shifting standard applicable to discrimination claims brought under FEHA as follows:

"'California uses the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination based on a theory of

15

disparate treatment.  (*Guz* [*v. Betchel National, Inc*. (2000)] 24 Cal.4th 317, 354 [(*Guz*)]; see *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).)  "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially.  Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained."  [Citation.]

"'Under the *McDonnell Douglas* test, the plaintiff has the initial burden of establishing a prima facie case of discrimination.  [Citation.]  To meet this burden, the plaintiff must, at a minimum, show the employer took actions from which, if unexplained, it can be inferred that it is more likely than not that such actions were based on a prohibited discriminatory criterion.  [Citation.]  A prima facie case generally means the plaintiff must provide evidence that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests a discriminatory motive.  [Citation.]

"'If the plaintiff establishes a prima facie case, then a presumption of discrimination arises, and the burden shifts to the employer to rebut the presumption by producing admissible evidence sufficient to raise a genuine issue of material fact the employer took its actions for a legitimate, nondiscriminatory reason.  [Citation.]  If the employer meets that burden, the presumption of discrimination disappears, and the plaintiff must challenge the employer's proffered reasons as pretexts for discrimination or offer other evidence of a discriminatory motive.'  [Citation.]

"In *Scotch* [*v. Art Institute of California* (2009)] 173 Cal.App.4th [986,] at pages 1004–1005 [(*Scotch*)], a panel of this court addressed the application of the *McDonnell Douglas* test in the context of a motion for summary judgment:  'As *Guz*

16

explains, several decisions suggest that when an employee opposes an employer's motion for summary judgment of a discrimination claim, the employer must make the initial showing of no merit and the *McDonnell Douglas* burdens are reversed. [Citation.] Other decisions suggest the plaintiff can survive the employer's summary judgment motion merely by presenting, at the outset, evidence satisfying the prima facie elements of *McDonnell Douglas*. [Citation.] *Guz* did not resolve the issue because the defendant in that case proceeded to the second step of the *McDonnell Douglas* test and produced admissible evidence sufficient to raise a genuine issue of material fact that its actions were taken for a legitimate, nondiscriminatory reason. [Citation.]

"'In *Kelly* [*v. Stamps.com Inc.* (2005)] 135 Cal.App.4th 1088, the court explained the *Guz* standard in light of the California Supreme Court's decision in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826: "A defendant employer's motion for summary judgment slightly modifies the order of these [*McDonnell Douglas*] showings. If, as here, the motion for summary judgment relies in whole or in part on a showing of nondiscriminatory reasons for the discharge, the employer satisfies its burden as moving party if it presents evidence of such nondiscriminatory reasons that would permit a trier of fact to find, more likely than not, that they were the basis for the termination. [Citations.] To defeat the motion, the employee then must adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred. [Citations.] In determining whether these burdens were met, we must view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing [the plaintiff's] evidence while strictly scrutinizing defendant's."'" (*Wilkin, supra*, 71 Cal.App.5th at pp. 820–822.) In *Scotch, supra*, 173 Cal.App.4th at page 1005, the appellate court "agreed with and applied the standard set forth in *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, in affirming summary judgment in favor of an employer as to a disability discrimination claim alleged under FEHA." (*Wilkin, supra*, at p. 822.)

17

B.  *St. Joseph Health Met Its Burden of Presenting Evidence of Nondiscriminatory*
   *Reasons for Providing Negative Feedback and Terminating Chapman's Employment*

In support of the first cause of action, Chapman alleged in the complaint she "sustained adverse employment action by Defendant's failure to prevent Plaintiff from suffering from discrimination and harassment by Defendant and its employees which consequently resulted in her anticipated termination of employment with Defendant because of her sex and/or gender."  Chapman reiterated the same allegation in relation to her age in support of the second cause of action.  The complaint does not identify the specific conduct she deemed to be an adverse employment action; it does not mention the verbal warning or her 2017 performance evaluation.

We question whether the verbal warning and/or the 2017 performance evaluation alone would qualify as an adverse employment action under FEHA.  (See *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 392 [supervisor's memorandum and letter of instruction did not rise to the level of an adverse employment action because neither had any effect on the terms and conditions of plaintiff's employment]; *Lefevre v. Design Professional Ins. Cos*. (N.D.Cal. 1994) 1994 U.S. Dist. Lexis 20978 [considering it "dubious" a verbal warning constituted an adverse employment action, as the plaintiff "was not demoted, docked pay or benefits, or transferred to a less desirable position, and her job responsibilities were not altered in any way"]; but see *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1456 [negative performance review and counseling memorandum accusing deputy district attorney of incompetence, dishonesty and insubordination which eliminated or at least delayed reasonable potential for promotion can constitute adverse employment actions].)

Assuming the verbal warning and/or the 2017 performance evaluation constituted adverse employment action, evidence of the verbal warning and 2017 performance evaluation shows they were issued for the legitimate business reason of counseling Chapman for poor communication, cooperation, and completion of certain

18

tasks. In addition, St Joseph Health produced evidence showing Chapman was given the verbal warning by her supervisor Zarnegar following Zarnegar's receipt of reports Chapman had been having conflicts with other staff members.

To the extent Chapman contends she suffered an adverse employment action in the form of constructive discharge of employment, as pointed out by the trial court[5] there is no evidence St. Joseph Health's conduct "effectively force[d] [Chapman] to resign," noting "'[c]riticism of an employee's job performance, even "unfair or outrageous" criticism, does not create the intolerable working conditions necessary to support a claim of constructive discharge.'" In any event, as discussed *ante*, St. Joseph Health produced evidence the criticism given to Chapman was provided for a legitimate business reason.

Even if on this record Chapman's actual employment termination could constitute an adverse employment action within the meaning of FEHA, St. Joseph Health produced evidence showing, after almost two years of medical leave, St. Joseph Health terminated Chapman's employment after she failed to respond to several inquiries regarding the status of that leave and her ability to return to work. Therefore, to the extent Chapman contends the actual termination of her employment in September 2019 constituted an adverse employment action, as the trial court observed, "[t]here is also no evidence plaintiff was able to return to work."

St. Joseph Health, therefore, satisfied its burden of presenting sufficient evidence of nondiscriminatory reasons for Chapman's verbal warning, the contents of her

---

[5] The trial court also found Chapman failed to exhaust administrative remedies as to her constructive discharge theory because she failed to file her claim with the then-entitled Department of Fair Employment and Housing within one year of the date she went on medical leave, rejecting her "continuing violation" argument. We do not review the court's conclusion regarding whether Chapman's claims based on a constructive discharge theory are time-barred because those claims, for the reasons we discuss, fail on the merits.

19

2017 performance evaluation, and the termination of her employment, whether constructive or actual.  The burden therefore shifted to Chapman to "'""adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred."'""  (*Wilkin, supra*, 71 Cal.App.5th 806, 823.)

C.  *Chapman Did Not Present Any Evidence of Pretext for Discrimination*

Our review of the record shows Chapman failed to present any evidence the verbal warning, the statements in the 2017 performance evaluation with which Chapman disagrees, or the reasons given for her employment termination were "'either false or pretextual.'"  (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 886.)  She also did not provide any evidence showing St. Joseph Health acted with discriminatory animus, "'or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated.'"  (*Ibid.*)

To show an employer's reason for an adverse employment action is pretextual, an employee "'""cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."'"  [Citation.]  To meet his or her burden, the employee "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,'"' and hence infer "'"that the employer did not act for [the asserted] non-discriminatory reasons."'"  [Citation.]  '[I]f nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct.  [Citations.]  While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to discriminate illegally.  Thus, "legitimate" reasons [citation] in this

20

context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination.'" (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159–1160, italics omitted.)

Furthermore, it is undisputed Chapman was replaced by an older woman. In sum, accepting all of Chapman's evidence, we conclude she failed to meet her burden to "'adduce or point to evidence raising a triable issue, that would permit a trier of fact to find by a preponderance that intentional discrimination occurred.'" (*Scotch, supra*, 173 Cal.App.4th at p. 1005.) The trial court, therefore, properly granted summary judgment in favor of St. Joseph Health on the first cause of action for sex discrimination and on the second cause of action for age discrimination.

III.

RETALIATION CLAIM

In the third cause of action, Chapman alleged retaliation in violation of FEHA, Government Code section 12940, subdivision (h). To establish a prima facie case of retaliation under FEHA, a plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

"In summary judgment proceedings, a FEHA retaliation claim is treated the same as a FEHA discrimination claim: Where ""the employer presents admissible evidence either that one or more of [the employee's] prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory [or nonretaliatory] factors, the employer will be entitled to summary judgment unless the [employee] produces admissible evidence which raises a triable issue of fact material to the [employer's] showing.'"'" (*Wilkin, supra*, 71 Cal.App.5th at p. 828.)

The trial court granted summary judgment as to the FEHA retaliation claim on the same grounds it granted summary judgment as to the discrimination claims (the

21

latter of which Chapman no longer challenges). Accepting Chapman's evidence, no disputed issue of material fact exists. Summary judgment as to the retaliation claim was therefore properly granted.

In her opening brief, Chapman argues she might have been retaliated against because she had "complained about perceived violations" regarding safety and patient care, "wage and hour violations," and "union organizing efforts." Chapman's retaliation claim, however, was limited to retaliation in violation of FEHA. Government Code section 12940, subdivision (h) makes clear an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified or assisted in any proceeding under this part." In other words, Chapman's claim is for retaliation for engaging in FEHA-related conduct. Therefore, this argument fails.

IV.

WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY CLAIM

In the fourth cause of action, Chapman alleged St. Joseph Health terminated her employment in violation of public policy. "Apart from the terms of an express or implied employment contract, an employer has no right to terminate employment for a reason that contravenes fundamental public policy as expressed in a constitutional or statutory provision." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252.)

Chapman's wrongful termination in violation of public policy claim was based on her assertion St. Joseph Health terminated her employment "as a result of her gender and age in violation of Government Code § 12900, et seq." For the reasons discussed *ante*, there are no triable issues of material fact as to Chapman's FEHA claims. Consequently, her claim for wrongful termination in violation of public policy fails as a matter of law. (*Wilkin, supra*, 71 Cal.App.5th at p. 831; *Hanson v. Lucky Stores, Inc.*

22

(1999) 74 Cal.App.4th 215, 229 [because the plaintiff's FEHA claim failed, his wrongful termination claim also failed].)

V.

INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS

"The elements of the tort of intentional infliction of emotional distress are: "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."'" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.) In order to be considered outrageous, conduct must be "'"so extreme as to exceed all bounds of that usually tolerated in a civilized community.'" (*Ibid.*) "Liability for intentional infliction of emotional distress "'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.)

Negligent infliction of emotional distress is simply a negligence claim, not an independent tort. (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 818.) An employer's supervisory actions are inherently intentional and not the basis for a negligence claim. (*Semore v. Pool* (1990) 217 Cal.App.3d 1087, 1105.)

"Generally, the right to recover workers' compensation benefits is the exclusive remedy for an employee against an employer for a workplace injury." (*M.F. v. Pacific Pearl Hotel Management LLC* (2017) 16 Cal.App.5th 693, 699.) A plaintiff, however, "may pursue a claim for intentional infliction of emotional distress in the employment context where the conduct at issue violates FEHA *and* also satisfies the elements of the claim." (*Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 101, italics added.)

Chapman's fifth cause of action for intentional and/or negligent infliction of emotional distress is entirely based on the allegations of her FEHA claims. We agree

23

with the trial court that because Chapman did not show a triable issue of material fact exists as to her FEHA discrimination or retaliation claims as discussed *ante*, her cause of action for emotional distress fails as it is tethered to her FEHA claims.

We also agree with the trial court that "[e]ven if viewed independently, the emotional distress claim is preempted by the Workers' Compensation Act" because of the dearth of evidence of outrageous conduct. "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80; see *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 945–946.)

None of the conduct alleged in the complaint or described in the evidence produced by Chapman constitutes extreme and outrageous conduct. To the extent St. Joseph Health provided Chapman with negative feedback, whether in the form of the verbal warning, her 2017 performance evaluation, or otherwise, and failed to address her employment-related complaints, such actions constituted personnel actions that do not rise to the level of extreme and outrageous conduct.[6] Summary judgment, therefore, was properly granted.

---

[6] In its ruling on the motion for summary judgment in this case, the trial court observed "[i]n her deposition, plaintiff [testified she] took her leave of absence due to work-related stress."

## DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.